CHARLES HAYES, WILLIAM HAYES, DAVID DREWRY, HARRY DREWRY, W. O. BUSH, SANFORD BUSH, SAM. McCLELLAN AND GEO. GASTON, PLAINTIFFS IN ERROR,

*v.*

THE TERRITORY OF WASHINGTON, DEFENDANT IN ERROR.

Game law, extending to but five countries of the Territory, does not contravene the Organic Law of the Territory, which forbids the Territorial Legislature from granting special privileges.

The case of *Rosencrantz v Territory,* deciding that married women, residing with their husbands, are competent grand jurors, *affirmed.*

The word "*homo*" in the phrase "*Liber legalis et homo,*" defining the qualifications of jurors at the common law at the time of the adoption of the Federal Constitution, was not employed in the narrow sense of designating men in contradistinction from women for jury service.

ERROR, to Second Judicial District, holding terms at Olym-

These plaintiffs in error were held to answer for a violation of the game law, viz : hunting and pursuing deer with dogs in the county of Thurston.

Upon the impaneling of the Grand Jury, it was found by examination of the individual members thereof that Agnes W. Prather and A. R. Elliott were each married women, residing with their husbands, and John McReavy, foreman of the Grand Jury, and E. L. Willey and John T. Kelly, individual members thereof, were residents of Mason County, a political division of Washington Territory to which that portion of the game law under which this indictment was found does not apply.

The plaintiffs in error challenged these grand jurors.

The challenge was disallowed by the Court, and the plaintiffs in error duly excepted.

The question of the qualification of married women residing with their husbands to serve as grand jurors, was discussed in the briefs and authorities cited, substantially, as in *Rosencrantz* v. *Territory, infra.*

*Robinson, Porter & Robinson,* and *E. P. Ferry,* for Plaintiffs in error.

The indictment alleges that it was found by a Grand Jury of the Territory of Washington, composed of lawful persons from the body of the Second Judicial District, *and* from the counties of Mason and Thurston.

Therefore, the indictment does not show that it was a Grand Jury in and for any particular county or counties, and is void for uncertainty. (Code of Washington, Sec. 1005 ; Chitty's Criminal Law, 196 ; Archibold's Criminal Practice and Pleadings, 264, and cases cited.)

The law under which this indictment is presented applies only to five counties, viz : Thurston, Cowlitz, Whatcom, Island and Lewis. It discriminates as to the manner of reducing wild game (deer) to possession.

It is in the nature of a special tax on *hunting* wild game in these counties.

In these densely timbered counties it amounts to prohibition.

*J. C. McFadden,* Prosecuting Attorney.

Where an indictment purports to be found by " a Grand Jury of a State, inquiring of crimes and offenses within and for a county or district," it must be taken to be a Grand Jury of that county or district, as well as of the State, and it is therefore found by such a body as the law intends. (Proffatt on Jury Trials, Sec. 54 ; *Murky* v. *State*, 3 Ohio N. S. 362.)

Laws for the preservation of game have been enacted in all civilized countries, and the measures best adapted to attain this end are for the determination of the Legislature.

The act in question is valid within principles laid down in many judicial decisions. (16 Wallace, 36 ; 4 Wheaton, 122 ; 12 Wheaton, 213 ; 12 Howard, U. S. 269 ; 60 N. Y. 10 ; 9 Wheaton, 195 ; 15 Wallace, 279 ; 6 Wallace, 31 ; *Commonwealth* v. *Look*, 108 Mass. 452.)

Opinion by GREENE, Chief Justice.

By this record there are presented to us but two questions which we deem worth while to consider. They are questions as to the validity of the game law, upon which this indictment was framed, and as to the validity of the indictment found by a Grand Jury composed in part of married women.

The game law in question restricted hunting in five counties only. It is contended that, for this reason, it is inconsistent with that inhibition in the Organic Act which forbids the Legislature from granting special privileges. But the provisions of this game law fall without distinction upon all inhabitants of the Territory. All are forbidden to hunt at certain seasons within the counties named. There is no special privilege, unless it be in favor of the brute life of the specified area, or those of human kind who are so happy as to be alive at the hunting season.

We think the law to be a sensible police regulation, entirely within the power of the Territorial Legislature to enact.

Upon the question of eligibility of married women to Grand Jury duty, we have but a word to say. This Court, circling through its four phases like the moon, has already once, when differently constituted, passed and thrown its light upon that question. What it then saw it sees now. Its views are unchanged. But as the question has revolved somewhat, so as to

bring a part of it more directly under our gaze, we will content ourselves with casting our more restricted view upon that part only.

It is contended that the provisions of the Federal Constitution, preserving to the citizens the right of juries, grand and petit, as known to the common law, are incompatible with any legislation by our Territorial Legislature that would make it the right or duty of women to serve as petit jurors in any case, or as grand jurors in cases capital or infamous; and that therefore the legislation which, interpreted as this Court interprets it, admits without discrimination women to jury duty as freely as men, cannot rightly be given any such interpretation or effect.

The definition and touchstone of qualification for jury duty, at the time of the adoption of the Constitution and its amendments, was the ancient phrase, " *Liber et legalis homo.*" It rested the qualification on a threefold basis—freedom, law, and humanity; in other words, the juror must be free, lawful, and of the human race. This definition was rigid as far as freedom and humanity were concerned, but elastic as to lawfulness. Custom and statute prescribed the lawfulness. For a jury to try one sort of an issue, males were not *Liber et legalis homines*, and females were; for a jury to try another sort, both men and women were; for the trial of other and all ordinary issues, males only were competent. But all this depended upon law and custom, and was liable to change as the conditions of society or new cases might demand.

This elasticity of the common law respecting jury qualifications was preserved in, and flows to us through, the Federal Constitution. We are free to change by statute the legal qualification of jurors so long as we do not transgress limitations imposed by acts of Congress, and so long as we do not put on juries those who are under duress of servitude, or who are monkeys or angels; but do put on them those only who are free beings, sympathetic, and schooled in the lot of human kind.

We find no error in the record, and the judgment of the Court below will therefore be affirmed.

I concur:   S. C. WINGARD, Associate Justice.

I concur in all of this opinion that treats of questions other than the validity of the indictment dependent upon the presence of the Grand Jury of married women living with their husbands.

GEORGE TURNER, Associate Justice.