[Nos. 11149-3-I; 12307-6-I. Division One. April 11, 1984.]

STANLEY R. WEIKAL, *Appellant,* v. THE DEPARTMENT OF FISHERIES, *Respondent.*

JEROLD R. DAVIS, *Appellant,* v. THE DEPARTMENT OF FISHERIES, *Respondent.*

*Stafne, McGreevy & Taylor, Scott E. Stafne,* and *R. Patrick McGreevy,* for appellant Weikal.

*William Johnston,* for appellant Davis.

*Kenneth O. Eikenberry, Attorney General,* and *Rochelle E. Wienker, Dennis D. Reynolds,* and *David Anthony Weeks, Assistants,* for respondent.

RINGOLD, J.—Stanley R. Weikal and Jerold R. Davis appeal the denial of their applications for crab fishing licenses, alleging that RCW 75.28.275 violates state equal

protection[1] and the article 1, section 28 prohibition against special privileges and hereditary emoluments. We find that the statute is not unconstitutional and affirm.

Weikal bought and equipped a boat in May 1980, with the intention of participating in the shellfish industry. He received a 1980 crab license in July 1980 and fished the 1980 season. His 1981 application was denied because he did not qualify for a license under RCW 75.28.275 (the crab license law) which requires applicants to have held a license for at least 1 year between 1975 and 1979. After an unsuccessful administrative appeal, Weikal filed a class action in superior court. The court granted a summary judgment for the State, entering an order upholding the statute and dismissing the action. Weikal appeals, arguing that the statute creates an arbitrary classification violating equal protection, and establishes a "hereditary privilege" violating article 1, section 28.

Jerold Davis also applied for and was denied a 1981 crab license. Davis held a license during the years 1977–80, but did not make crab landings totaling 1,000 pounds during any one of those years as is required by the licensing statute. Davis challenges the statute on due process and equal protection grounds because the statute does not contain a "hardship exception," as do other similar statutes. These cases have been consolidated on appeal.

## EQUAL PROTECTION

Former RCW 75.28.275 at the time in issue here read:

(1) After January 1, 1981, it is unlawful to take crab in the Puget Sound licensing district without first obtaining a license endorsement . . . licenses . . . shall be limited to those vessels which:

(a) Held a commercial shellfish pot license issued between January 1, 1975, and December 31, 1979, or had transferred to the vessel such a license;

---

[1]Article 1, section 12 of the Washington State Constitution states:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

(b) Have not transferred the license to another vessel;

(c) Can establish, by means of shellfish receiving documents . . . that one thousand pounds of crab were caught and landed . . . under the license during any one year in that period; and

(d) Held, and have not transferred, a shellfish pot license during 1980.

. . .

(4) License endorsements issued under this section are not transferable from one owner to another owner, except from parent to child or upon the death of the owner, before July 1, 1982.

Weikal contends that the crab license law violates article 1, section 12 of the state constitution by arbitrarily creating a special class of vessel owners eligible for permits. Weikal relies on *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P.2d 1101 (1936), claiming that it is controlling precedent and mandates reversal.

The applicable test to determine whether the crab licensing law passes the equal protection challenge is the rational basis test. This minimum level of scrutiny is appropriate for economic legislation or when neither a suspect classification or a fundamental right is involved. *Myrick v. Board of Pierce Cy. Comm'rs,* 101 Wn.2d 140, 677 P.2d 140 (1984); *Equitable Shipyards, Inc. v. State,* 93 Wn.2d 465, 611 P.2d 396 (1980). The crab license law is an economic and conservation measure. Laws of 1980, ch. 133. No suspect class or fundamental right is involved; there is no right to fish in state waters. *Bacich,* at 79.

The rational basis test involves a 3–step inquiry:

(1) Does the classification apply alike to all members within the designated class . . . (2) whether some basis in reality exists for reasonably distinguishing between those within and without the designated class, and (3) whether the challenged classifications have any rational relation to the purposes of the challenged statute.

(Citations omitted.) *Myrick,* at 143.

The challenged legislation meets these requirements. The classification applies equally to all those within the class. There is a reasonable basis for the licensing require-

ments set up by the Legislature: protecting those with an investment and interest in the fishery, who are actively pursuing that interest. Protecting those engaged in an industry is not an equal protection violation. "Grandfather clauses" have been upheld in a variety of situations; *see, e.g., City Sanitary Serv., Inc. v. State Utils. & Transp. Comm'n,* 64 Wn.2d 739, 393 P.2d 952 (1964).

Limiting the number of those who may participate in the fishery is rationally related to the goal of protecting the resource and regulating the industry. With fewer participating, those holding licenses will be able to harvest sufficient quantities to be financially solvent without seriously depleting the crop. Limitations on the number engaged in an industry have previously been upheld against equal protection challenges. *See, e.g., Ace Fireworks Co. v. Tacoma,* 76 Wn.2d 207, 455 P.2d 935 (1969).

*Bacich* does not require us to find the crab license law unconstitutional. *Bacich* concerned an initiative passed in November 1934 and effective in December 1934, restricting gill net salmon fishing licenses to those who had licenses in 1932 or 1933. The Supreme Court found that the statute created an arbitrary classification violating article 1, section 12 of the state constitution because there was no reasonable basis for distinguishing one class from another, that is, between those who held licenses in 1932 and 1933 and those who did not.

The State argued in *Bacich* that the statute was justified because it favored conservation while allowing those traditionally gillnetting for a living to continue to do so. The court disagreed, stating that limiting licenses to those who held them in 1932 or 1933 excluded others who held licenses and were actually fishing in 1934 when the initiative became effective. Thus, the regulation did not achieve the suggested purpose.

The legislation under our consideration avoids the problems that the court pointed out in *Bacich*. The statute was passed a year before its effective date, so that those who did not have licenses in the designated period had notice

that they would not be eligible for 1981 licenses. In addition to having held a license in 1975–79, the license may not have been transferred to another and the applicant must have had a 1980 license. This avoids the *Bacich* problem that those no longer actively fishing were eligible for licenses. The 1,000–pound landing requirement further limits eligibility to those with a significant commitment to the industry. The legislation avoids the over– and underinclusive problems noted in *Bacich*.

Additionally, the sole purpose of the initiative in *Bacich* was conservation. Here, the Legislature specifically found that regulation was necessary for both economic and conservation purposes. Laws of 1980, ch. 133. In *Bacich* the licenses were nontransferable and no new licenses would be issued. Eventually there would be no gillnetting. Here, the Legislature is attempting to regulate the industry both to conserve the supply and to protect the economy. The licenses are transferable from parent to child[2] and new licenses may be issued when the total number of licenses falls below 200. The legislation is intended to limit the number of crab fishers while protecting those with a traditional interest and investment in the industry. *Bacich* did not forbid protection of those already associated with an industry, rather, the court found that the initiative did not achieve this end. The legislation here is drafted to avoid the *Bacich* defects and bears a rational relationship to the suggested goal.

### HARDSHIP EXCEPTION

Davis challenges the statute on due process and equal protection grounds. He argues that the proper classification for equal protection analysis is the entire fishing industry, not just the crab fishery. Using this classification, Davis reasons that the crab licensing statute violates equal protection by failing to provide a hardship exception as is provided in other moratorium laws such as former RCW

---

[2]After July 1982, the licenses became freely transferable. RCW 75.28.275.

75.28.440 (herring fishery). He claims the need for a hardship provision is shown by the subsequent amendment of the statute to provide such an exception.

■ Davis's argument is without merit. The reasonableness and validity of the crab licensing law is discussed above. Davis does not offer any authority in support of his assertion that the proper class for equal protection analysis is all fisheries. It has been held that persons fishing may be classified on the basis of gear type or species harvested as long as those within the same class are treated alike. *Puget Sound Gillnetters Ass'n v. Moos,* 92 Wn.2d 939, 603 P.2d 819 (1979). Nor is there any constitutional requirement that the law include a "hardship exception." Inclusion of a hardship provision is for legislative, not judicial, determination. Legislative decisions will not be changed by judicial action unless the one challenging the legislation establishes its invalidity beyond a reasonable doubt. *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974). Davis has not met this burden.

## No Hereditary Privilege

Article 1, section 28 of the state constitution states "No hereditary emoluments, privileges, or powers, shall be granted or conferred in this state." Weikal's final argument is that the crab licensing law violates this section because transferability was initially limited to parent–child.

■■ This limited transferability of licenses is not a "hereditary" privilege. Hereditary is defined in *Webster's Third New International Dictionary* 1059 (3d ed. 1971) as "2a: descended or capable of descending from an ancestor to an heir at law . . . required to pass by inheritance b: having title or possession through inheritance . . . 3: of a kind or status established by tradition". The crab license law does not require that licenses descend to the heirs at law upon death of the holder, or provide to whom the license must go at death. It merely allows inter vivos transfer between parent and child, and allows transfer, regard-

less of relationship, upon death of the holder. Neither inter vivos parent–child transfer nor free transfer at death is "hereditary."

Weikal's equal protection challenge to the limited transferability provision also fails. Even assuming that the statute classifies "parents" and "non–parents" differently, this classification is rationally related to the purposes of the legislation: conserving the resource while protecting those with a traditional investment in the area. Temporarily limiting license transfer to parent–child or at death allows families to continue fishing even if the parent is disabled or wishes to retire, but prevents the potential problem of qualified persons obtaining licenses for transfer to unqualified persons. This kind of determination is for the Legislature to make. It is not irrational and arbitrary so as to violate equal protection.

We affirm the trial court's order granting the State's motion for summary judgment and dismissing the actions.

SCHOLFIELD, J., and JOHNSEN, J. Pro Tem., concur.