[No. 56255-5. En Banc. October 25, 1990.]

OMEGA NATIONAL INSURANCE COMPANY, ET AL, *Appellants,* v. RICHARD G. MARQUARDT, *as Insurance Commissioner, Respondent.*

AMERICAN COUNCIL OF LIFE INSURANCE, ET AL, *Appellants,* v. RICHARD G. MARQUARDT, *as Insurance Commissioner, Respondent.*

418

*Carney, Stephenson, Badley, Smith & Spellman, P.S.,* and *Basil L. Badley* and *Stuart C. Allen; Brink & Todd* and *Daniel Brink,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Donald F. Cofer, Assistant,* for respondent.

*Gary D. Simms* and *Laurence E. Mason* on behalf of the American Academy of Actuaries, amici curiae for appellants.

*Rocky V. Lindell, Henry E. Lippek,* and *David B. Simmons* on behalf of the National Association of Insurance Commissioners, amici curiae for respondent.

*Patricia A. Smith, Steven Zaleznick, Robin Talbert, Lisa Brodoff,* and *Jonathan Sheldon* on behalf of the American Association of Retired Persons, amici curiae for respondent.

ANDERSEN, J.—

## FACTS OF CASE

In this case, several insurance companies and an insurance trade association challenge the validity of an administrative rule prohibiting the sale of certain kinds of life insurance policies deemed unfair or deceptive by the State of Washington Insurance Commissioner (hereafter the Commissioner).

On December 6, 1988, the Commissioner adopted WAC 284-23-550 (hereafter the rule). In the Commissioner's statement filed with the Code Reviser in accordance with former RCW 34.04.045, the rule is summarized as follows:

> Proposed WAC 284-23-550 will establish a relationship between death benefits and premiums that must be met by life insurers, to assure that death benefits payable under a life insurance policy are reasonable in relation to premiums paid for the insurance. In general, during its first ten years, life insurance covered by the rule must provide benefits that equal or exceed the premiums paid therefor, plus interest. It will be an unfair practice to do otherwise.[1]

The rule does not apply to policies that have a minimum death benefit of $25,000 or more.[2]

The Commissioner promulgated the rule pursuant to RCW 48.02.060 which generally authorizes the Commissioner to make reasonable rules and regulations for effectuating provisions of the insurance code.[3] A number of representatives from various insurance companies testified

---

[1] State Register 88-21-083 (1988).

[2] WAC 284-23-550(6)(a).

[3] State Register 88-24-053 (1988).

at public hearings and argued that the rule would have the effect of reducing the kinds of insurance available to the elderly, that less drastic regulation would solve the perceived problems, and that the rule exceeded the Commissioner's statutory grant of authority. Not a great deal was offered by way of detailed response to the Commissioner's query as to how to curb the abuses reflected in the complaints received by the Commissioner from elderly purchasers of small life insurance policies; generally, however, it was the industry's position that more detailed consumer disclosure was the best remedy.

Omega National Insurance Company (Omega) exercised its rights under former RCW 34.04.025(3) to request that the Commissioner issue a concise statement of principal reasons for and against the adoption of the rule. The Commissioner's statement filed in response thereto explained that the intent of the rule was to deal with small life insurance policies issued to older buyers where high mortality rates and heavy expense loading combined to produce extremely unfair results. The Commissioner's position was, and is, that under the targeted policies, unless the policy holder dies within a small window of time, the premium will exceed the benefits—and that even if the policy holder dies within that brief window period, the death benefit is often so small as to be virtually meaningless even in modest estates.

The Commissioner stated that many policies endorsed by celebrities in mass-marketing plans were such a poor purchase that normal persons would have to be ill informed, confused or deceived before they would buy such a plan. The Commissioner further explained that he was enacting the rule in response to a history of complaints from senior citizens (and their children) made after realizing that the premiums already paid exceeded the face amount of the policies—and that the payments must continue to be paid until death if the beneficiary was to receive the full benefit.

The Commissioner concluded that such policies (particularly the intensively mass–marketed small policies targeting older citizens) produced an unfair result and should be a prohibited practice under RCW 48.30.010.

Omega and Pierce National Life Insurance Company filed a declaratory judgment action seeking an adjudication that the rule was invalid. The American Council of Life Insurance and four other insurance companies filed similar actions seeking declaratory relief. Based on a stipulation of all the parties, the trial court entered an order consolidating the two actions.

Cross motions for summary judgment were thereupon filed by the Commissioner and by the companies. The Honorable Robert J. Doran granted the Commissioner's motion and, in a comprehensive Memorandum Decision, concluded: the rule does not exceed the statutory rulemaking authority vested in the Commissioner under RCW 48.02.060 and RCW 48.30.010(2); the rule was adopted in compliance with the Administrative Procedure Act, RCW 34.04; and the rule does not violate plaintiffs' constitutional rights.

We granted direct review. Plaintiffs here argue that the rule exceeds the Commissioner's statutory authority; is unreasonable; is unconstitutional because it violates due process, equal protection and the takings clause; and it discriminates against the elderly.

This case presents two basic issues.

## ISSUES

ISSUE ONE. Does the State of Washington Insurance Commissioner have statutory authority to promulgate a rule designed to prohibit the sale of life insurance policies deemed unfair if that rule has any impact on rates?

ISSUE TWO. Does the rule in question violate due process, equal protection or the takings clause, or unconstitutionally discriminate against the elderly?

## DECISION

ISSUE ONE.

CONCLUSION. We conclude that the Commissioner did act within his statutory authority in promulgating WAC 284-23-550.

This declaratory judgment action was brought pursuant to the former Administrative Procedure Act, RCW 34.04-.070(2). The scope of review prescribed by former RCW 34.04.070(2)[4] (which is here applicable) is that the court shall declare the rule invalid only if it finds that it violates constitutional provisions, or exceeds the statutory authority of the agency, or was adopted without compliance with statutory rulemaking procedures.

As authority for the promulgation of this rule, the Commissioner relies upon his general rulemaking authority as set forth in RCW 48.02.060 and on RCW 48.30.010. The former statute, RCW 48.02.060, provides in part:

> (1) The commissioner shall have the authority expressly conferred upon him by or reasonably implied from the provisions of this code.
>
> . . .
>
> (3) The commissioner may:
> (a) Make reasonable rules and regulations for effectuating any provision of this code, . . .

The latter statute, RCW 48.30.010, provides:

> (1) No person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section.
>
> (2) In addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code, the commissioner may from time to time by regulation promulgated pursuant to chapter 34.04 RCW, define other methods of competition and other acts and practices in the conduct of such business reasonably found by the commissioner to be unfair or deceptive.

---

[4]Now amended and codified under RCW 34.05.570(2)(c).

■ We recently explained the scope of review utilized in determining the validity of an insurance regulation enacted pursuant to RCW 48.30.010(2):

> The Insurance Commissioner has broad powers over the control, supervision and direction of the insurance business. The Legislature, by enacting RCW 48.30.010(2), has granted the Commissioner the authority to define various acts or practices as unfair or deceptive. Where the Legislature has specifically delegated to an administrator the power to make regulations, such regulations are presumed valid. The burden of overcoming this presumption lies on the challenger. *Judicial review is limited to a determination of whether the regulation in question is reasonably consistent with the statute being implemented.*

(Citations omitted. Italics ours.)[5] It follows that the threshold issue in this case is whether the rule is reasonably consistent with RCW 48.30.010 and with the remainder of RCW Title 48 (the insurance code).

The insurance companies basically make the following three arguments supporting their contention that the Commissioner has exceeded his statutory authority:

> (1) that the rule conflicts with RCW 48.19 because the effect of the rule is to put a ceiling on rates and the portion of the insurance code (RCW 48.19) which grants the Commissioner rate making authority excludes life insurance from its scope;
> (2) that the remainder of the insurance code does not grant the Commissioner rate regulation authority over life insurance although it grants such authority regarding other kinds of insurance; and
> (3) that the rule is invalid because it is unreasonable and therefore violative of RCW 48.02.060(3)(a) and RCW 48.30-.010(2).

RCW 48.19 is the part of the insurance code which generally deals with insurance rates. The scope section of that chapter excludes life, disability, some reinsurance, some

---

[5]*Federated Am. Ins. Co. v. Marquardt*, 108 Wn.2d 651, 654–55, 741 P.2d 18 (1987). *See also Weyerhaeuser Co. v. Department of Ecology*, 86 Wn.2d 310, 314, 545 P.2d 5 (1976); *Horan v. Marquardt*, 29 Wn. App. 801, 803, 630 P.2d 947 (1981); *Multicare Med. Ctr. v. Department of Social & Health Servs.*, 114 Wn.2d 572, 588–89, 790 P.2d 124 (1990).

aircraft and vessel insurance and title insurance.[6] The rate chapter goes on to provide detailed criteria for rates of other kinds of insurance.

The insurance companies argue that because the rate chapter of the code does not apply to life insurance, the Commissioner is prohibited from promulgating any rule under any chapter of the code which affects life insurance rates. They argue that the rate chapter, a specific statute, controls over the general statute regarding unfair practices. The Commissioner responds with the argument that the rule does not attempt to force a reduction in the price of these insurance policies, but rather is aimed at banishing certain offensive insurance products from the state marketplace altogether.

■■ We conclude that the Commissioner's argument is well taken. The rule is not primarily a rate setting rule; rather, it defines certain types of insurance policies which are, in the Commissioner's judgment, inherently unfair to insurance purchasers. The Commissioner argues that the only way to define which policies are so unfair that they should be banished from the market altogether is to use a premium/benefit ratio. By affidavit, the Commissioner's actuary explained that the normal meaning of rate regulation involves the computation of a "loss ratio", roughly described as benefits paid divided by premiums collected, and that the challenged rule does not make any such comparison and does not implement any system of rate regulation. The Commissioner also argues that the rule is indifferent as to whether or not the premiums associated with a particular life insurance policy are excessive. Rather, he says, the rule seeks to banish from this state's insurance market certain life insurance policies, particularly those targeting older people, whose effect is unfair or deceptive.

The insurance companies' argument would have us construe the rate chapter's exclusion of life insurance to mean

---

[6]RCW 48.19.010(1)(a)–(f).

that the Commissioner may not engage in any life insurance rulemaking under any chapter of the insurance code which has any effect on rates. We decline to so construe the statute, to do so would eviscerate the authority granted by the Legislature in the unfair and deceptive practices portion of the statute. RCW 48.30.010(2) provides that "*[i]n addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code,* the commissioner may . . . define other methods of competition and other acts and practices . . . reasonably found by the commissioner to be unfair or deceptive." (Italics ours.)

The companies argue that RCW 48.19, however, prevails over RCW 48.30 because the rate chapter is a "specific" statute whereas the authority to define unfair acts is a general statute and that specific statutes prevail over general ones. There is more to it than that, however. In interpreting a statute, we are obliged to construe the enactment as a whole, and to give effect to *all* language used.[7] Every provision must be viewed in relation to other provisions and harmonized if at all possible.[8] Preference is given a more specific statute *only* if the two statutes deal with the same subject matter and conflict to such an extent that they cannot be harmonized.[9]

The Commissioner argues that under RCW 48.30.010(2) he has the authority to define acts or practices of insurance companies which are unfair to the public even though the rule may have some impact on insurance rates. RCW 48.30.010(2) gives the Commissioner authority to define and prohibit unfair acts "[i]n addition to" unfair acts already

---

[7]*State v. S.P.,* 110 Wn.2d 886, 890, 756 P.2d 1315 (1988); *State v. Newton,* 109 Wn.2d 69, 79, 743 P.2d 254 (1987).

[8]*S.P.,* at 890; *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 509, 730 P.2d 1327 (1986).

[9]*Tacoma v. Taxpayers of Tacoma,* 108 Wn.2d 679, 690, 743 P.2d 793 (1987); *In re Estate of Little,* 106 Wn.2d 269, 284, 721 P.2d 950 (1986); *Blair v. WSU,* 108 Wn.2d 558, 576–77, 740 P.2d 1379 (1987).

defined elsewhere in the insurance code. In the particular respects here under consideration, we perceive no basic conflict between the rate provisions and the unfair practices provisions of the insurance code; rather, the respective provisions seek to remedy different potential problems in the insurance industry and can be harmonized in the situation before us so as to give effect to both.

The companies next argue that other provisions of the code, specifically RCW 48.18.110(2) (regarding disability), RCW 48.21A.060 (regarding health) and RCW 48.34.100(2) (regarding credit life and accident and health), give the Commissioner the authority to determine the reasonableness of benefits in relation to premiums. The companies deduce from these specific grants of authority that the Legislature implicitly meant to prohibit rules regarding life insurance which declare certain benefit/premium ratios to be unfair or deceptive. They cite the rule of statutory construction that the mention of one thing implies the exclusion of others. This argument is unconvincing in this respect because RCW 48.30.010(2) gives the Commissioner authority to define unfair acts or practices *in addition to* those already specifically enumerated by the code.

Furthermore, this argument undermines the insurance companies' first argument that the rate chapter (RCW 48.19) addresses *all* issues of rate regulation and therefore rules impacting rates promulgated under other chapters of the code are implicitly prohibited. These statutory sections, listed above, illustrate that the Legislature also addressed rate–making issues in chapters other than RCW 48.19. Although disability insurance, like life insurance, is excluded from the scope of RCW 48.19 by RCW 48.19.010-(1)(b), disability rates are also regulated by RCW 48.18-.110(2). We thus conclude that the Legislature did not exhaust all laws and regulatory authority relating in any way to rates solely in the rate chapter, RCW 48.19. The Commissioner's lack of statutory authority to engage in detailed comprehensive rate making for life insurance policies does not undermine the power given him in RCW

48.30.010(2) to define and prohibit specific unfair or deceptive acts or practices even when such rules may have an incidental impact on rates.

■ This case essentially involves the Commissioner's power (and the tools available to him) to protect the insurance–buying public from insurance products which are unfair or deceptive. In order to protect the insurance–buying public in the somewhat complex purchase situations presented in this case, the courts must afford considerable deference to the Commissioner's expertise in defining unfair insurance policies or practices. As one authoritative insurance law text explains, in discussing an insurance commissioner's powers:[10]

> It is the public policy to protect policyholders from abuses by insurance companies, and the insurance commissioner represents such policyholders by virtue of his office and represents the state in the enforcement of the insurance laws. . . .
> . . . Such official also is vested with broad power to interpret, clarify, and implement legislative policy.

(Footnotes omitted.)

In sum, we find nothing in the insurance code to indicate that the Legislature intended curtailing the Commissioner's rulemaking authority so as to forbid any rulemaking regarding life insurance which has any impact whatsoever on rates.

The companies also argue that the rule is invalid because the statutes[11] only give the Commissioner authority to promulgate "reasonable" rules and that this rule is unreasonable. The companies argue that the rule is unreasonable in relation to the factual basis offered to support it and is unsupported by the rulemaking record.

■ These arguments are answered by our recent decision in *American Network, Inc. v. Utilities & Transp. Comm'n,* 113 Wn.2d 59, 69, 776 P.2d 950 (1989), wherein we observed that

---

[10]19 J. Appleman & J. Appleman, *Insurance* § 10393, at 232–33 (1982).

[11]RCW 48.02.060(3)(a); RCW 48.30.010(2).

a court will not substitute its judgment for that of an agency. *Nor will it examine a record for substantial evidence in reviewing a declaratory judgment on the validity of a rule.* These are solely legislative areas of concern if no constitutional or statutory violation is involved. . . . Regulations will not be struck down unless "'compelling reasons are presented sufficient to show the scheme is in conflict with the intent and purpose of the legislation.'"

(Citations omitted. Italics ours.)

Here, the intent of the Legislature was to allow the Commissioner to define unfair or deceptive acts or practices which may not be expressly forbidden by the insurance code. The rule with which this case is concerned conforms with that intent. The record reflects the Chief Deputy Commissioner's explanation that "[a]t some point, adequate premiums required by the actuarial realities of old age and small policy size combine to produce a policy that, at best, produces only a minimal benefit and, for the vast majority of policyholders, a significant depletion of small estates. The effect of WAC 284–23–550 is to establish that point by rule for purposes of policy form approval or disapproval."[12]

One example provided by the Commissioner[13] illustrates the problem the Commissioner is here seeking to remedy. A 76–year–old affiant said this:

About seven years ago, at age 69, I purchased an Omega National Life Insurance Company (Purple Cross) whole–life insurance funeral plan. By last year I had paid in accumulated premiums of $2,524.32 and realized that this already greatly exceeded the death benefit.

. . . After having paid $2,524.32 of premiums over a 72–month period, I was advised that if I discontinued payments, my beneficiary would receive at my death only $1,144 in paid–in death benefits; but if I immediately paid an additional $800 in premiums, I would have a "reduced" paid–up plan which would pay $1,940 at the time of my death. Thus, by paying a total of $3,324.32 in premiums, a $1,940 benefit would be paid when I die. This does not take into account interest I could

---

[12]Fourth affidavit of David H. Rodgers.

[13]Second affidavit of David H. Rodgers.

have earned on my premiums had I left them in a savings account.

This is but one of many such examples with which the record is replete.

We conclude that the companies have failed to provide compelling reasons showing that the rule is in conflict with the intent and purpose of the insurance code or that the Commissioner has failed to promulgate a reasonable rule.

██ The companies also argue that a less drastic rule could have been enacted which would have eliminated the unfairness perceived by the Commissioner; generally, they agree, more disclosure to the consumers was the appropriate remedy. The Commissioner rejected proposals to solve the problem by way of disclosure on the basis that in this situation disclosure is viewed as both ineffective and unenforceable. It is not our function to second–guess decisions such as this. As we have frequently pointed out, the wisdom or desirability of an administrative rule is not subject to review by the courts.[14] In fashioning an administrative remedy, the relation of remedy to policy is peculiarly one for the agency and its special competence, and the courts will not lightly disturb the agency's choice of remedy;[15] thus we decline to disturb it in this case.

ISSUE TWO.

CONCLUSION. The rule promulgated by the Commissioner, which is here in question, does not violate due process, equal protection or the takings clause, nor does it unconstitutionally discriminate against the elderly.

The insurance companies argue that the rule violates substantive due process in that the "premium cap" violates the insurers' constitutional right to earn a reasonable return on their operations. They further argue that the

---

[14]*Federated Am. Ins. Co. v. Marquardt,* 108 Wn.2d 651, 658, 741 P.2d 18 (1987); *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314, 545 P.2d 5 (1976).

[15]*Insurance Co. of North Am. v. Kueckelhan,* 70 Wn.2d 822, 836–37, 425 P.2d 669 (1967).

rule's use of a dollar amount (*i.e.*, applying only to policies under a $25,000 face value) violates equal protection, and that the rule's impact on older insurance buyers unconstitutionally discriminates against the elderly and that the rule is also confiscatory.

In addressing substantive due process attacks on economic regulations, we have repeatedly emphasized the necessity for judicial deference to the Legislature in the exercise of the police power to accomplish economic regulation.[16] In *Federated Am. Ins. Co. v. Marquardt,* 108 Wn.2d 651, 659, 741 P.2d 18 (1987), we responded to an insurers' substantive due process argument as follows:

> In matters relating to the conduct of the insurance business courts should not substitute their economic beliefs for the judgment of legislative bodies and should defer to the Legislature in the exercise of its police power to accomplish the regulation of unfair or deceptive economic practices.

*Federated,* 108 Wn.2d at 661. When viewed as a regulation defining unfair practices in the insurance industry, we conclude that the rule before us constitutes a rational solution to a perceived problem.

The insurance companies' equal protection argument is based on the contention that there is no rational basis for the distinction drawn by the rule between life insurance policies where the death benefit is over $25,000 and those where it is under $25,000. This court considers the equal protection clause of the fourteenth amendment to the United States Constitution and the privileges and immunities clause of the Washington Constitution substantially identical and they are thus considered as one issue.[17] Where a legislative classification neither involves suspect criteria nor affects fundamental rights, the courts will engage in only minimal scrutiny and the challenger bears

---

[16]See discussion by Justice Utter in *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 531–35, 520 P.2d 162 (1974).

[17]*American Network, Inc. v. Utilities & Transp. Comm'n,* 113 Wn.2d 59, 77, 776 P.2d 950 (1989); *Seattle v. Rogers Clothing For Men, Inc.,* 114 Wn.2d 213, 233, 787 P.2d 39 (1990); *In re Borders,* 114 Wn.2d 171, 175, 786 P.2d 789 (1990).

the heavy burden of showing that there is no rational basis for the classification.[18] The appropriate equal protection test for a purely economic regulation is the "minimum scrutiny" or "rational basis" test and a particularly heavy presumption of constitutionality applies in economic regulation.[19] A legislative classification will be upheld under the rational relationship test unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.[20]

The rational basis test requires that the challengers do more than merely challenge the wisdom and expediency of the statute. They must show that the classification is contrary to the purposes of the enabling legislation. The classification must be purely arbitrary to overcome the strong presumption of constitutionality applied to economic regulations.[21]

The insurance companies argue that the rule violates the rational basis test. We disagree. Several persuasive reasons are advanced for the rule's classification of smaller and larger life insurance policies. The Commissioner argues that in policies under the purview of his new rule, it is the combination of high mortality rates together with heavy expense loading that produces the unfair results[22] and that because the unit expense costs on larger policies are less than on smaller policies, the relationship between premiums and benefits in larger policies tend to be more favorable to the consumer. Additionally, the Commissioner points out that by establishing an exemption for policies over a $25,000 death benefit value, the rule exempts many policies that would be sold as estate, tax planning and

---

[18]*American Network*, 113 Wn.2d at 77–78.

[19]*American Network*, 113 Wn.2d at 78–79.

[20]*State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987).

[21]*American Network*, 113 Wn.2d at 82.

[22]Second affidavit of David H. Rodgers.

investment instruments irrespective of their premium/benefit ratio.

The purpose of RCW 48.30.010(2) is to allow the Commissioner to define and prohibit unfair or deceptive acts or practices in the insurance industry. In light of the Commissioner's reasons for the policy–size classification prescribed in the rule, we are unable to conclude that the classification is wholly irrelevant to the legitimate state interest of prohibiting unfair insurance sales.

The insurance companies further argue that the rule discriminates against the elderly. Initially, there is a question whether the insurance companies have standing to assert this argument. Generally, the doctrine of standing prohibits one litigant from raising the constitutional rights of another.[23] As amicus American Association of Retired Persons (AARP) argues, it may be that the insurance companies lack standing to assert the rights of the elderly, in that they have no commonality of interest with older persons and that there is no indication older persons want to claim age discrimination in this context.

Even assuming the insurance companies do have standing to assert the rights of older persons, however, the regulation does not specifically mention or segregate older insurance buyers. Rather, the rule applies evenhandedly to *all* buyers when the premium/benefit relationship violates the rule. We therefore reject the equal protection challenge because the rule does not establish distinct classes to whom it applies differently.[24] We are unconvinced that the rule unfairly discriminates against older persons; rather, the rule seeks to protect all buyers from purchasing policies which are inherently unfair.

---

[23]*Haberman v. WPPSS*, 109 Wn.2d 107, 138, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805, 102 L. Ed. 2d 15, 109 S. Ct. 35 (1988). *See also Whitmore v. Arkansas*, ___ U.S. ___, 109 L. Ed. 2d 135, 110 S. Ct. 1717 (1990).

[24]*Seattle v. Slack*, 113 Wn.2d 850, 858, 784 P.2d 494 (1989).

 The companies also challenge the rule on the basis that it is confiscatory and results in a taking of their property. It is unclear what property interest has allegedly been taken. By its terms, the rule applies prospectively only and does not affect existing insurance policies. A party has no vested right in the continuation of existing statutory law.[25]

The companies rely upon *Calfarm Ins. Co. v. Deukmejian,* 48 Cal. 3d 805, 771 P.2d 1247, 258 Cal. Rptr. 161 (1989) in which the California Supreme Court held facially unconstitutional part of an initiative measure. The facts of the *Calfarm* case are clearly distinguishable from those of the present case in that nothing in the rule challenged in the present case forces insurers to write polices for which they do not receive a fair return. This rule does not compel an insurer to offer a policy with inadequate premiums and, presumably at least, insurers will not enter a particular market where no financial gain is possible. The insurers have failed to show that the rule is confiscatory and facially invalid on that basis; we therefore reject the companies' takings clause argument.

 In sum, we conclude that the questioned rule was within the authority of the State of Washington Insurance Commissioner to adopt pursuant to the Commissioner's general rulemaking power and pursuant to the Commissioner's authority to define and prohibit unfair or deceptive acts or practices, and that the rule does not violate the insurance companies' constitutional rights.

Affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, DURHAM, SMITH, and GUY, JJ., concur.

---

[25]*Haberman,* 109 Wn.2d at 143; *In re Marriage of MacDonald,* 104 Wn.2d 745, 750, 709 P.2d 1196 (1985).