[No. 59241-1.   En Banc.   October 1, 1992.]

TIMOTHY D. FOLEY, ET AL, *Respondents*, v. THE DEPARTMENT OF FISHERIES, *Appellant*.

*Kenneth O. Eikenberry, Attorney General,* and *Jay D. Geck, Assistant,* for appellant.

*Williams, Kastner & Gibbs,* by *Dennis D. Reynolds* and *Margaret A. Sundberg,* for respondents Foley, et al.

*James A. Connolly* and *Connolly, Holm, Tacon & Meserve,* for respondents Selness.

JOHNSON, J. — RCW 75.30.210 places restrictions on who may commercially harvest sea urchins. The Department of Fisheries appeals the superior court ruling that RCW 75.30-.210 is unconstitutional. We find that the statute complies

with equal protection principles and reverse the Superior Court.

## I

Sea urchins are spiny invertebrates resembling rolled-up porcupines. Young urchins must hide beneath the spines of larger urchins for survival. Sea urchins are commercially harvested by divers working from fishing vessels. Divers are required to observe minimum and maximum size limitations when harvesting urchins. WAC 220-52-073(2). These size limits ensure enough oversized urchins exist to protect the young urchins, and undersized urchins are allowed to spawn at least once before being harvested. The urchin harvesting season generally runs from October 1 to March 31.

The sea urchin fishery remained relatively small throughout the 1970's and the first half of the 1980's. Only 12 vessels harvested urchins in the 1985-86 season. The fishery began to experience dramatic growth in the 1986-87 season when 39 vessels harvested urchins. In spite of this growth, no shortage or overharvesting of urchins occurred during this season, and divers generally complied with the size limit regulations.

Overharvesting problems first began to occur, however, during the 1987-88 urchin season in which 97 vessels landed urchins. Divers found it increasingly difficult to find any urchins of legal harvesting size. Consequently, some divers violated the size limit regulations, and the Department of Fisheries (Fisheries) cited numerous vessels for oversized urchins.

This situation worsened in the 1988-89 urchin season when almost 200 vessels competed to harvest urchins. Poaching violations occurred, as well as size limit violations. Virtually no urchins of *any* size remained in certain areas after harvesting by divers had occurred. One harvesting area had to be closed midseason because of overharvesting. Many inexperienced and insufficiently trained divers entered the fishery at this time. Too many people were trying to harvest

sea urchins, and this problem threatened the economic viability of the urchin fishery.

The Legislature enacted RCW 75.30.210 in an effort to address this problem, and the statute's requirements became effective on October 1, 1989. The constitutionality of this statute is now at issue in this case. RCW 75.30.210 places limits on the number of people who can harvest urchins. Under this statute, it is unlawful to commercially harvest sea urchins from a vessel that lacks a sea urchin endorsement to a shellfish diver license. Prior to October 1, 1989, only a shellfish diver license was required to commercially harvest urchins.

A sea urchin endorsement will only be issued to vessel owners who:

> (a) Held a commercial shellfish diver license . . . between January 1, 1988, and December 31, 1988, or had transferred to the vessel such a license;
> (b) Have not transferred the license to another vessel; and
> (c) Can establish, by means of dated shellfish receiving documents issued by the [Department of Fisheries], that twenty thousand pounds of sea urchins were caught and landed under the license during the period of April 1, 1986, through March 31, 1988.

Laws of 1989, ch. 37, § 2.[1] Vessel owners must thus meet both the shellfish diver licensing requirements *and* the 20,000-pound landing requirement to qualify for an urchin endorsement.

The statute provides for a 2-year qualifying period, from April 1, 1986, through March 31, 1988, for meeting the landing requirement. The average vessel during this period could harvest approximately 2,600 pounds of urchins per day. Vessels could thus meet the 20,000-pound landing requirement in 8 harvesting days. Clerk's Papers, at 63.

Urchin landings occurring after March 31, 1988, are not considered for purposes of the landing requirement. The 2-year qualifying period thus generally precludes vessel owners

---

[1] The Legislature amended RCW 75.30.210 in 1990. *See* Laws of 1990, ch. 62, § 2 (effective Mar. 15, 1990). These amendments do not affect the disposition of this case.

who did not make substantial urchin landings until the 1988-89 season from qualifying for urchin endorsements. The statute provides, however, that this landing requirement may be reduced or waived if "extenuating circumstances" prevented a vessel owner from landing a sufficient number of urchins during the 2-year qualifying period. RCW 75.30.210(3).

The 17 respondents in this case are vessel owners who did not make the 20,000-pound landing requirement during the qualifying period.[2] Most of them did not purchase their vessels until 1988, and none made significant urchin landings until after the end of the qualifying period. Each applied for a sea urchin endorsement, and Fisheries denied each of these requests. The respondents sought administrative determinations that the landing requirement should be waived due to extenuating circumstances. Fisheries determined that extenuating circumstances did not exist in any of the respondents' cases.

The respondents then sought judicial review of the final administrative orders denying them urchin endorsements. They raised two arguments before the Superior Court. First, they argued RCW 75.30.210 violated the federal equal protection clause and the privileges and immunities clause contained in the Washington Constitution. Second, they argued Fisheries erred in failing to find extenuating circumstances in their cases.

The Superior Court consolidated the 17 cases. The court ordered counsel for both sides to brief and argue the common constitutional issue before it would reach the respondents' second issue. Clerk's Papers, at 174-75. After this briefing and argument, the court ruled that RCW 75.30.210 was unconstitutional because it violated equal protection principles under both the state and federal constitutions. The court consequently did not reach the respondents' second

___

[2] The respondents in this case are: Randall Stephen Selness; Glenn D. Selness; Timothy D. Foley; Steven Davis; Michael L. Hensel; Larry D. Huffaker; David Johnson; Kenneth J. Keithcart; Duane King; Sandra L. Kreider; Dean C. Nielsen; Norman D. Potter; Mark F. Reekie; Leonard L. Ritenour; L. Joe Schreiner; William A. Stevens; and Scott Tivald.

argument that Fisheries had erred in failing to find extenuating circumstances in their individual cases. Fisheries appeals the ruling that RCW 75.30.210 is unconstitutional. This court granted direct review.

## II

The Superior Court ruled that RCW 75.30.210 violates both the equal protection clause contained in the federal constitution and article 1, section 12 of the Washington Constitution. The Fourteenth Amendment to the federal constitution provides in relevant part that: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Article 1, section 12 of the Washington Constitution provides that:

> No law shall be passed granting to any citizen [or] class of citizens . . . privileges or immunities which upon the same terms shall not equally belong to all citizens . . ..

■ The court has treated claims under these two constitutional provisions as presenting one equal protection challenge to the governmental classification at issue. *See Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 430-31, 799 P.2d 235 (1990). The court has at times recognized, however, that article 1, section 12 may provide broader protections than those provided under the federal equal protection clause. *See Clark v. Pacificorp*, 118 Wn.2d 167, 192 n.13, 822 P.2d 162 (1991) (citing *Darrin v. Gould*, 85 Wn.2d 859, 868, 540 P.2d 882 (1975)). The respondents do not argue that article 1, section 12 of the state constitution should be construed independently from the federal equal protection clause. See Brief of Respondents, at 14 n.9. As such, they have not presented briefing pursuant to *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) in support of any such independent construction, and we will not reach the state constitutional issue without such briefing. *See World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 390, 816 P.2d 18 (1991), *cert. denied*, ___ U.S. ___, 118

L. Ed. 2d 391, 112 S. Ct. 1672 (1992). We accordingly analyze this case as presenting one equal protection challenge to the sea urchin endorsement statute.

■ The first step in analyzing an equal protection claim is determining the standard of review. *Haberman v. WPPSS*, 109 Wn.2d 107, 139, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed,* 488 U.S. 805, 102 L. Ed. 2d 15, 109 S. Ct. 35 (1988). The parties agree that the statute at issue is an economic regulation that does not involve either a suspect classification, such as race, or a fundamental right. It is well established that legislative bodies have broad discretion in enacting economic legislation that does not employ suspect classifications or burden fundamental rights. *New Orleans v. Dukes,* 427 U.S. 297, 49 L. Ed. 2d 511, 96 S. Ct. 2513 (1976). Such statutes are accordingly subject only to minimum scrutiny. *Omega Nat'l Ins. Co.,* 115 Wn.2d at 430-31.

■■ The court will apply the rational basis test in cases involving minimum scrutiny review. *Omega Nat'l Ins. Co.,* 115 Wn.2d at 431. Under this test, a statutory classification violates the equal protection clause only if it fails to rationally further a legitimate state interest.[3] *Burlington Northern R.R. v. Ford,* ___ U.S. ___, 119 L. Ed. 2d 432, 112 S. Ct. 2184, 2186 (1992). A legislative classification will be upheld so long as "the relationship of the classification to its [legislative purpose] is not so attenuated as to render the distinction arbitrary or irrational". *Nordlinger v. Hahn,* ___ U.S. ___, 120 L. Ed. 2d 1, 112 S. Ct. 2326, 2332 (1992). The challenging party has the burden of showing that the classification

---

[3]This court has previously used the following 3-part inquiry in applying this rational basis test:

(1) Does the classification apply alike to all members within the designated class? (2) Do reasonable grounds exist to support the classification's distinction between those within and without each class? and (3) Does the classification have a rational relationship to the purpose of the legislation?

*Clark v. Pacificorp,* 118 Wn.2d 167, 192-93, 822 P.2d 162 (1991) (citing *Skagit Motel v. Department of Labor & Indus.,* 107 Wn.2d 856, 860, 734 P.2d 478 (1987)).

contained in the statute is purely arbitrary. *Dukes,* 427 U.S. at 303-04; *Omega Nat'l Ins. Co.,* 115 Wn.2d at 431.

▪ We first identify the interest the Legislature sought to further in applying the rational basis test to the sea urchin endorsement statute. The sea urchin resource showed serious signs of depletion prior to the legislation. In enacting RCW 75.30.210, the Legislature determined:

> increased regulation of commercial sea urchin fishing is necessary to preserve and efficiently manage the commercial sea urchin fishery in the waters of the state.

Laws of 1989, ch. 37, § 1; Laws of 1990, ch. 62, § 1. The legislative purpose behind RCW 75.30.210 is thus to protect and efficiently regulate the sea urchin fishery. The Legislature may enact fish and game regulations pursuant to its police power, and it has done so since territorial days. *Rains v. Department of Fisheries,* 89 Wn.2d 740, 745, 575 P.2d 1057 (1978) (citing *Hayes v. Territory,* 2 Wash. Terr. 286, 5 P. 927 (1884)). The State has a legitimate interest in protecting and regulating its sea urchin fishery. *See Toomer v. Witsell,* 334 U.S. 385, 92 L. Ed. 1460, 68 S. Ct. 1156 (1948) (State of Louisiana has a legitimate interest in protecting and regulating its shrimp fishery). The Legislature thus sought to further a legitimate state interest in enacting RCW 75.30.210.

▪ We must now determine whether the classification contained in RCW 75.30.210 rationally furthers the State's legitimate interest in protecting and regulating its sea urchin fishery. The statute creates a limited class of vessel owners eligible to harvest sea urchins. Under the statute, vessel owners who evidenced substantial participation in the urchin fishery during the 2-year qualifying period fall within this class. The 20,000-pound landing requirement distinguishes those vessel owners who made substantial landings from those who made only isolated, sporadic landings during the 2-year qualifying period. Those who made substantial landings during this period could reasonably have a greater financial dependence on continued participation in the

urchin fishery than those who did not. The statute thus rationally furthers the State's legitimate interest in preserving and regulating the urchin fishery by limiting the number of vessel owners harvesting urchins, and the criteria contained in the statute for limiting this number are not arbitrary or irrational. The sea urchin endorsement statute thus meets the rational basis test.

Prior case law supports this conclusion. In *Weikal v. Department of Fisheries,* 37 Wn. App. 322, 679 P.2d 956 (1984), the Court of Appeals held that former RCW 75.28.275, the crab endorsement statute, did not violate the equal protection clause. Former RCW 75.28.275 limited the number of people who could participate in the crab fishery by means of a crab endorsement requirement. The statute provided that crab endorsements would only be issued to vessels which: (1) held a commercial shellfish pot license during a 5-year qualifying period; and (2) landed 1,000 pounds of crab under the license during any 1-year period. *Weikal,* 37 Wn. App. at 324-25. In upholding the statute, the Court of Appeals reasoned that:

> Limiting the number of those who may participate in [a] fishery is rationally related to the goal of protecting the resource and regulating the industry. With fewer participating, those holding licenses will be able to harvest sufficient quantities to be financially solvent without seriously depleting the crop.

*Weikal,* 37 Wn. App. at 326. As in *Weikal,* the fishery in this case became overcrowded, and limits were required to preserve the fishery's economic viability. The statute upheld in *Weikal* does not differ materially from the sea urchin endorsement statute for the purposes of our minimum scrutiny review. We accordingly conclude that RCW 75.30.210, like the crab endorsement statute, does not violate the equal protection clause.

The respondents argue the urchin statute is unconstitutional because the Legislature chose not to include the 1988-89 urchin season in the qualifying period. Many of the respondents landed urchins during this season. They argue

the statute is entirely arbitrary and irrational because those vessel owners who did not make substantial urchin landings until the 1988-89 season could conceivably have as much interest in remaining in the fishery as those who *do* qualify for urchin endorsements under the statute.

We must reject this argument. The Legislature evidently concluded it could not effectively address the overharvesting problem if the qualifying period extended to the 1988-89 urchin season. Sixty-two vessels each landed at least 20,000 pounds of urchins during the statute's 2-year qualifying period. Almost 100 *additional* vessel owners entered the urchin fishery during the 1988-89 season. Of these additional vessel owners, approximately 44 landed over 20,000 pounds of urchins and would have thus qualified for urchin endorsements if the qualifying period included the 1988-89 season. Clerk's Papers, at 64-65. If the 1988-89 season had been included in the qualifying period, a total of over 100 vessel owners would have qualified for endorsements. The sea urchin resource showed the first signs of depletion in the 1987-88 season when almost 100 vessels participated in the fishery. By the 1988-89 season, the economic viability of the urchin fishery was in danger because of overharvesting. The Legislature could thus logically conclude that it needed to limit the number of vessels below the number that had participated in the 1987-88 season. Its decision to exclude the 1988-89 season from the qualifying period was thus neither arbitrary nor irrational. *See New Orleans v. Dukes,* 427 U.S. 297, 49 L. Ed. 2d 511, 96 S. Ct. 2513 (1976) (ordinance excluding pushcart vendors who had operated less than 8 years in the city's French Quarter from continued operations in the Quarter was not arbitrary or irrational under the rational basis test).

The trial court in this case relied on *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P.2d 1101 (1936) in ruling the urchin endorsement law is unconstitutional. In *Bacich,* a statute restricted the issuance of gill net salmon fishing licenses to people who held such licenses in either 1932 or

1933. Under the statute, people who obtained licenses during these 2 years were the only ones ever eligible to have and renew such licenses. The court in *Bacich* concluded the statute violated the equal protection clause because it created an entirely arbitrary class of people eligible to have and renew the licenses. *Bacich,* 187 Wash. at 81.

The sea urchin endorsement statute does not suffer from the same flaws as the statute in *Bacich.* The statute in this case restricts eligibility for urchin endorsements to those vessel owners who demonstrated substantial participation in the fishery by means of the 20,000-pound landing requirement. The statute in *Bacich* did not impose any landing requirement. In addition, the urchin endorsement statute contains a provision that requires vessel owners to maintain their participation in the fishery in order to renew their endorsements:

> after December 31, 1991, sea urchin endorsements . . . may be issued only to vessels:
> (a) Which held a sea urchin endorsement . . . during the previous year . . .; and
> (b) From which twenty thousand pounds of sea urchins were caught and landed in this state during the two-year period ending March 31 of an odd-numbered year . . ..

RCW 75.30.210(2)(a), (b). The statute in *Bacich* did not impose any such requirement. Moreover, the urchin statute allows for a waiver of the landing requirement if a vessel owner can show that extenuating circumstances prevented him or her from making sufficient landings during the relevant time period. RCW 75.30.210(3). The sea urchin endorsement statute does not create an arbitrary class of persons, and this case is accordingly distinguishable from *Bacich.*

■ Finally, the respondents argue that pursuant to our determination that the sea urchin endorsement statute does not violate the equal protection clause, this court should remand the case to the Superior Court to determine if the statute violates the equal protection clause *as applied* in the respondents' individual cases. *See* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* § 14.4 (3d ed. 1986); *Yick Wo v.*

*Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886) (ordinance that was nondiscriminatory on its face but administered more harshly against members of a racial minority violated the equal protection clause). The respondents have failed to present proper briefing or argument, either before this court or the Superior Court, in support of the claim that RCW 75.30.210 violates the equal protection clause as applied. A remand to determine whether the statute is unconstitutional as applied is therefore inappropriate.

However, because the Superior Court ruled RCW 75.30-.210 was unconstitutional, it did not rule on the respondents' claims that Fisheries erred in failing to find extenuating circumstances in their cases. We accordingly remand the case for review of these administrative determinations. The superior court ruling that RCW 75.30.210 is unconstitutional is reversed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.