57 P.3d 611 (2002)
Tony WILLOUGHBY, Respondent,
v.
DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, Appellant.
Lennie T. Cain, Respondent,
v.
Department of Labor and Industries of the State of Washington, Appellant.
No. 71950-1.
Supreme Court of Washington, En Banc.
Argued June 13, 2002.
Decided November 14, 2002.
*612 Christine Gregoire, Attorney General, John Wasberg, Assistant Attorney General, Seattle, Kames Johnson, Assistant Attorney General, Olympia, for Appellant.
Tony Willoughby, appearing pro se.
Lennie Cain, appearing pro se.
Bryan Harnetiaux, Debra Stephens, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers Association.
SANDERS, J.
Tony Willoughby and Lennie Cain challenge the validity of RCW 51.32.040(3)(a) and 72.60.102's bar against disbursing industrial insurance permanent partial disability benefits to prisoners who have no statutory beneficiaries and are unlikely to be released from prison. Judge Schacht of the Walla Walla County Superior Court found these statutes *613 worked a forfeiture of the prisoners' property contrary to RCW 9.92.110, violated their right to equal protection of the law, and deprived them of their property without due process of law. The Washington State Department of Labor and Industries (Labor & Industries) appealed. We granted direct review and affirm.

FACTS
Tony Willoughby is incarcerated at the state penitentiary in Walla Walla for life without the possibility of parole. He is unmarried and has no dependents.
At the time of his injury Willoughby was employed in a correctional work program to which the State's industrial insurance applied. On November 14, 1994, Willoughby suffered a job related injury, requiring the amputation of two-thirds of his right index finger.
Willoughby filed a timely claim with Labor & Industries, which rated his injuries and determined he should receive $10,260.81 in permanent partial disability benefits. However, because he was incarcerated and had no spouse or dependents, Labor & Industries canceled his benefits pursuant to RCW 51.32.040(3)(a) and 72.60.102.
In June 1996, Willoughby, acting pro se, filed a declaratory judgment action in Walla Walla County Superior Court, challenging the validity of RCW 51.32.040(3)(a) and 72.60.102 on several grounds, alleging violations of due process and equal protection, and claiming that RCW 51.32.040(3)(a) and 72.60.102 conflicted with RCW 9.92.110, which prohibits forfeiture of a prisoner's property by reason of his or her conviction.[1]
Lennie Cain, born in 1964, is serving a 60 year sentence at the state penitentiary in Walla Walla.[2] Cain has no spouse or dependents. Like Willoughby, Cain also was employed in a correctional work program, to which the State's industrial insurance applied. On March 17, 1997, Cain suffered a job related injury, incurring the loss of three fingers of his right hand. Cain timely filed a claim with Labor & Industries. Noting that Cain was incarcerated and had no spouse or dependents, Labor & Industries closed Cain's claim without first determining his permanent partial disability rating.
In May 1998, Cain, pro se, filed a declaratory judgment action with the Walla Walla County Superior Court challenging the validity of RCW 51.32.040(3)(a) and 72.60.102 on the same grounds raised by Willoughby. Concluding the legislative classification of RCW 51.32.040(3)(a), applicable to Willoughby and Cain by virtue of RCW 72.60.102, rests on grounds wholly irrelevant to achievement of any legitimate state objective and finding no conceivable set of facts that could provide a rational basis for the classification created by these statutory provisions, the trial court held the statutes violated constitutional equal protection and due process guaranties. It also concluded RCW 51.32.040(3)(a) and 72.60.102 conflicted with RCW 9.92.110 because they forfeit a prisoner's property. Willoughby v. Dep't of Labor & Indus., No. 96-2-00344-2, Findings of Fact and Conclusions of Law (Sup.Ct. July 25, 2000); Cain v. Dep't of Labor & Indus., No. 98-2-00240-0, Findings of Fact and Conclusions of Law (Sup.Ct. July 25, 2000).
On August 22, 2000, Labor & Industries appealed to the Court of Appeals, and the Willoughby and Cain matters, 19525-2-III and 195265-1-III, were consolidated on motion by the State. On March 1, 2001, the Court of Appeals stayed the superior court judgment and thereafter, on January 16, 2002, certified the consolidated appeals for direct review by this court. We accepted review pursuant to RCW 2.06.030(c).

*614 STANDARD OF REVIEW
The construction of a statute is a question of law and is reviewed de novo. Stuckey v. Dep't of Labor & Indus., 129 Wash.2d 289, 295, 916 P.2d 399 (1996). Constitutional challenges are reviewed de novo. Fusato v. Wash. Interscholastic Activities Ass'n, 93 Wash.App. 762, 767, 970 P.2d 774 (1999).

ANALYSIS
I. Forfeiture
If an issue can be resolved on statutory grounds, the court need not reach constitutional issues. Tunstall ex rel. Tunstall v. Bergeson, 141 Wash.2d 201, 210, 5 P.3d 691 (2000), cert. denied, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001). However, this claim that denial of a prisoner's permanent partial disability benefits pursuant to RCW 51.32.040(3)(a) and 72.60.102 violates RCW 9.92.110 (barring forfeiture of a prisoner's property by reason of his or her conviction) cannot succeed.
"[I]t is the duty of the court to reconcile apparently conflicting statutes and to give effect to each of them, if this can be achieved without distortion of the language used." Tommy P. v. Bd. of County Comm'rs, 97 Wash.2d 385, 391-92, 645 P.2d 697 (1982).
RCW 72.60.102 states in relevant part:
[A]ny inmate employed in classes I, II, and IV of correctional industries as defined in RCW 72.09.100 is eligible for industrial insurance benefits as provided by Title 51 RCW. However, eligibility for benefits for either the inmate or the inmate's dependents or beneficiaries for temporary disability or permanent total disability as provided in RCW 51.32.090 or 51.32.060, respectively, shall not take effect until the inmate is released pursuant to an order of parole by the indeterminate sentence review board, or discharged from custody upon expiration of the sentence, or discharged from custody by order of a court of appropriate jurisdiction.
RCW 51.32.040(3) states in relevant part:
(a) Any worker or beneficiary receiving benefits under this title who is subsequently confined in, or who subsequently becomes eligible for benefits under this title while confined in, any institution under conviction and sentence shall have all payments of the compensation canceled during the period of confinement. After discharge from the institution, payment of benefits due afterward shall be paid if the worker or beneficiary would, except for the provisions of this subsection (3), otherwise be entitled to them.
. . . .
(c) If the confined worker has any beneficiaries during the confinement period during which benefits are canceled under (a) or (b) of this subsection, they shall be paid directly the monthly benefits which would have been paid to the worker for himself or herself and the worker's beneficiaries[3] had the worker not been confined.[4]
According to these statutes, Labor & Industries is required to suspend payment of prisoners' permanent partial disability benefits for the duration of their imprisonment.
RCW 9.92.110 provides:
[a] conviction of crime shall not work a forfeiture of any property, real or personal, or of any right or interest therein.
*615 Labor & Industries correctly argues there is no conflict between statutes because RCW 51.32.040(3)(a) suspends payment of benefits where a worker is confined pursuant to a conviction, not because the worker is convicted. Similarly, RCW 72.60.102 lifts the suspension upon discharge at the expiration of the sentence, pursuant to an order of parole or by order of a court of appropriate jurisdiction. Thus, the statutes do not penalize Willoughby and Cain by reason of their conviction and do not conflict with RCW 9.92.110.
II. Due Process
A claimant alleging deprivation of due process must first establish a legitimate claim of entitlement to the life, liberty or property at issue. Meyer v. Univ. of Wash., 105 Wash.2d 847, 853, 719 P.2d 98 (1986). Legitimate claims of entitlement generally entail vested liberty or property rights. In re Marriage of MacDonald, 104 Wash.2d 745, 748, 709 P.2d 1196 (1985).
"A vested right, entitled to protection from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another."

Harris v. Dep't of Labor & Indus., 120 Wash.2d 461, 475, 843 P.2d 1056 (1993) (quoting Godfrey v. State, 84 Wash.2d 959, 963, 530 P.2d 630 (1975)).
By its text RCW 51.32.080 mandates payment of permanent partial disability benefits upon determination of an industrial injury. RCW 51.32.080(1)(a); see also Harris, 120 Wash.2d at 475, 843 P.2d 1056 (right to disability benefits does not vest until determination of an industrial injury). All workers who suffer an industrial injury covered by the Industrial Insurance Act, Title 51 RCW, have a vested interest in disability payments upon determination of an industrial injury.[5] Furthermore, Labor & Industries has a statutory duty to conduct an investigation pursuant to an injury claim and to determine whether the worker has suffered a compensable industrial injury. RCW 51.32.055. We recognize both Willoughby, for whom Labor & Industries has made a determination, and Cain, for whom it failed to perform its duty, have a vested interest in these benefits.[6]
Whether a statute deprives one of life, liberty or property without due process depends on "`(1) whether the [statute] is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably necessary to achieve that purpose; and (3) whether it is unduly oppressive.' " Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 21, 829 P.2d 765 (1992) (quoting Presbytery of Seattle v. King County, 114 Wash.2d 320, 330, 787 P.2d 907 (1990); Orion Corp. v. State, 109 Wash.2d 621, 646-47, 747 P.2d 1062 (1987); Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894)).
Labor & Industries alleges the challenged statutes' prohibition against paying benefits to incarcerated workers without statutory beneficiaries promotes several public purposes:
1. it accords with the act's purpose of shifting responsibility to the employers where the state already provides inmates' necessities;
2. withholding lump sum payments is consistent with maintaining prison discipline;
3. not paying prisoners saves the state money; and
4. withholding benefits reduces fraudulent claims.
Br. of Appellant at 34, 17-26. We must test each of the State's proffered grounds against due process criteria.
*616 A. The purpose of the compensation scheme is to shift responsibility for providing workers' necessities onto employers and industry rather than society at large.
Labor & Industries contends the statutory bar against distributing permanent partial disability benefits to imprisoned workers accords with the legitimate public purpose of limiting benefits to workers who form a part of the competitive market and require compensation for lost wage earnings. Br. of Appellant at 34, 17, 22. Because prisoners do not form a part of the competitive market and the State already provides them with the necessities of life, Labor & Industries argues there is no need to compensate prisoners for permanent partial disabilities. Id. at 18.
Because the Industrial Insurance Act's burden shifting scheme serves a legitimate public purpose, see generally State v. Clausen, 65 Wash. 156, 195-96, 117 P. 1101 (1911), it meets the first prong of the Presbytery test. However, it may still fail the second prong, which requires the State to use only means reasonably necessary to achieve that purpose.
Labor & Industries' argument assumes the purpose of permanent partial disability awards is to compensate for loss of earnings. Br. of Appellant at 17-18. This assumption is inconsistent with McIndoe v. Department of Labor & Industries, 144 Wash.2d 252, 26 P.3d 903 (2001).
McIndoe questioned whether a worker who is classified as permanently totally disabled and placed on pension may thereafter receive a permanent partial disability award for an unrelated occupational injury which developed prior to the pension award. 144 Wash.2d at 256, 26 P.3d 903. Labor & Industries there argued that allowing a permanent partial disability award after the claimant had been awarded a permanent total disability pension would constitute double recovery because both types of benefits compensate for presumed loss of wage-earning ability and the permanent total disability pension already fully compensates a worker for wage loss caused by occupational disability. McIndoe, 144 Wash.2d at 260, 26 P.3d 903. The workers disagreed, arguing the sole purpose of permanent partial disability awards is to compensate loss of bodily function. Id. We held:
The Department's reasoning that both permanent partial disability and permanent total disability benefits are compensation for wage loss does not accord with RCW 51.32.060(4), because RCW 51.32.060(4) allows the receipt of both types of benefits. To accept the Department's argument, we would have to ignore RCW 51.32.060(4).
Id. at 264, 26 P.3d 903. Here Labor & Industries argues because McIndoe did not expressly adopt the workers' premise that the sole purpose of permanent partial disability awards is to compensate for loss of bodily function, it implicitly held wage compensation is one of the purposes of these awards. Br. of Reply to Willoughby at 10-11.
We disagree. As noted in McIndoe, the wage loss rationale is inconsistent with the principle that an injury may be fully compensable, while having no effect at all on the worker's wage-earning capacity. Id. at 261, 26 P.3d 903 ("[L]oss of one testicle had no effect on worker's ability to perform manual labor; claim for a permanent partial disability award allowed because `[o]ne has a right to remain in possession of all those useful members of his body which are provided by nature.'" (quoting Kostida v. Dep't of Labor & Indus., 139 Wash. 629, 634, 247 P. 1014 (1926))).
Additionally, the statutory scheme for permanent partial disability awards does not even take into account actual wage earning power
because two individuals who have the same loss of function are entitled to the same permanent partial disability award. While the loss of a finger, for example, might have little disabling effect on a stevedore, it would be devastating to the earning ability of a pianist. Thus, a permanent partial disability award is not specifically tied to wage earning ability.

Id. at 262, 26 P.3d 903 (emphasis added) (citations omitted).
*617 Further, it is error to even consider loss of earning power when fixing an award for permanent partial disability. McIndoe, 144 Wash.2d at 261, 26 P.3d 903 (citing Cayce v. Dep't of Labor & Indus., 2 Wash.App. 315, 317, 467 P.2d 879 (1970)).
Finally, Labor & Industries' own regulation, WAC 296-20-01002, contradicts its position:
Permanent partial disability:.... Under Washington law disability awards are based solely on physical or mental impairment due to the accepted injury or conditions without consideration of economic factors.
We reject the burden-shifting argument because it is unrelated to the general nature of permanent partial disability benefits.
B. Labor & Industries argues withholding benefits to prisoners preserves prison discipline.
Labor & Industries argues the statutory bar on payment of permanent partial disability benefits to inmates avoids discipline problems occasioned by large cash payments to prisoners. Br. of Appellant at 24. Although maintaining prison discipline serves a legitimate public interest, see, e.g., In re Personal Restraint of Dyer, 143 Wash.2d 384, 396, 20 P.3d 907 (2001) (granting prison administrators broad discretion in matters pertaining to internal prison discipline), merely asserting a legitimate objective does not end the inquiry; the means must still reasonably advance the objective and not be unduly oppressive.
Logically the statutory bar against prisoners receiving permanent partial disability awards while imprisoned would affect prison discipline only if the benefits were actually provided as cash payments readily available to the inmates for individual use. But permanent partial disability benefits are provided on a monthly basis, not as a lump sum. RCW 51.32.080(6). Moreover, as Labor & Industries concedes, payments are not automatically available to inmates for their discretionary use absent action by the Secretary of the Department of Corrections.[7] Resp. to Br. of Amicus Curiae at 10.
C. Labor & Industries maintains withholding benefits to prisoners preserves state resources.
Labor & Industries argues its denial of benefits to prisoners is justified to preserve state resources because the State already provides prisoners with their basic needs. Br. of Appellant at 25-26. However, as noted, the purpose of permanent partial disability benefits is to compensate injured workers for the loss of bodily functions, not to provide for their basic needs. Moreover, saving money is not a sufficient ground for upholding an otherwise unconstitutional statute in any event. See, e.g., Harris, 120 Wash.2d at 481 n. 12, 843 P.2d 1056 (cited by Department of Labor & Industries, Br. of Appellant at 17) (noting that even "where finite state resources are involved, a statutory discrimination `will not be set aside'" unless there is an independent rational basis to justify it) (quoting Caughey v. Employment Sec. Dep't, 81 Wash.2d 597, 599, 503 P.2d 460 (1972)); see also Plyler v. Doe, 457 U.S. 202, 227, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) ("Of course, a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources.").
D. Labor & Industries maintains withholding benefits to prisoners prevents fraudulent claims by members of the prison population.
Finally, Labor & Industries asserts prisoners are criminals and thus more likely to *618 abuse the industrial insurance plan by filing false claims, intentionally injuring themselves, or coercing fellow inmates to do the same. Br. of Appellant at 26-28. In Nicholas v. Riley, 874 F.Supp. 10 (D.D.C.), aff'd, 1995 WL 686227 (D.C.Cir.1995), the court denied the claimant's equal protection challenge to a statutory provision of the Higher Education Act of 1965 (20 U.S.C. § 1070a(b)(8)) that barred the award of Pell Grants to federal or state prisoners. Id. at 11. This case is distinguishable because the court relied on legislative history articulating the desire to eliminate fraud in the administration of Pell Grant moneys to prisoners. Id. at 13.
Here the legislature could not have so intended because prisoners continue to be eligible for benefits under the Industrial Insurance Act and the State is not spared the expense of processing industrial injury claims by inmates and investigating fraudulent claims or self-inflicted injuries. RCW 51.32.020 (barring payment where a worker's injuries are self-inflicted).
We therefore affirm the superior court's decision that RCW 51.32.040(3)(a), as applied to Willoughby and Cain by RCW 72.60.102, deprives them of property absent that lawful process which is due.
III. Equal Protection
Finally, we consider whether the classification scheme created by RCW 51.32.040(3)(a) and 72.60.102 violates the prisoners' right to equal protection of the laws.[8] "The first step in conducting any equal protection analysis is determining the appropriate standard of review." Tunstall ex rel. Tunstall v. Bergeson, 141 Wash.2d 201, 225, 5 P.3d 691 (2000) (citing Foley v. Dep't of Fisheries, 119 Wash.2d 783, 789, 837 P.2d 14 (1992)). Where, as here, finite state resources are involved, the court applies a rational basis test. Caughey v. Employment Sec. Dep't, 81 Wash.2d 597, 599, 503 P.2d 460 (1972).
Rational basis tests whether (1) all members of the class created within the statute are treated alike, (2) reasonable grounds exist to justify the exclusion of parties who are not within the class, and (3) the classification created by the statute bears a rational relationship to the legitimate purpose of the statute. DeYoung v. Providence Med. Ctr., 136 Wash.2d 136, 144, 960 P.2d 919 (1998).
A. Whether members of the class are treated alike.
Preliminarily Labor & Industries contests the superior court's designation of the affected class. Br. of Appellant at 13. The superior court held RCW 51.32.040(3)(a) creates two classes of prisoners: "(A) those who are likely to either be released from prison during their lifetimes or to have beneficiaries during their imprisonment; and (B) those who [are] not likely to either be released from prison or to have beneficiaries during their lifetimes." CP at 27-28. Labor & Industries contends the superior court should have defined the classes as (A) incarcerated workers and (B) workers who are not incarcerated. Br. of Appellant at 13.
Strictly speaking, a statute creates only one relevant class, whereby differential treatment creates subgroups within the general class. See, e.g., DeYoung, 136 Wash.2d at 144-45, 960 P.2d 919. The general class underlying the superior court's designation is the class of prisoners who are covered by the State's industrial insurance. Within that class the statute treats prisoners differently depending on whether they are likely either to be released or have beneficiaries during their lifetime. The general class underlying Labor & Industries' competing designation is the class of workers covered by the State's industrial insurance. But within that class the difference in treatment depends on *619 whether the worker is currently incarcerated.
As Labor & Industries acknowledges, the prisoners' benefits were suspended because they are unlikely to be released in their lifetimes and have no beneficiaries, not because they are prisoners. Br. of Appellant at 37-38. Thus, the distinction drawn by the superior court, rather than the one advanced by Labor & Industries, more accurately describes the relevant class.
But Labor & Industries then argues even if this court accepts the superior court's class designations, the statute still treats all members of this class equally because no prisoner receives benefits while incarcerated. Br. of Appellant at 28. However, Labor & Industries again ignores the relevant distinctions created by RCW 51.32.040(3)(a) and 72.60.102. These distinctions confer special advantages to some members of the group without making them equally available to all.
The transfer of benefits is one such advantage. The law recognizes that an advantage may be conferred to an individual where a third party is benefited. See, e.g., Culinary Workers & Bartenders Union No. 596 v. Gateway Cafe, Inc., 91 Wash.2d 353, 368, 588 P.2d 1334 (1979); 642 P.2d 403 (promise to perform obligations for the benefit of third parties constitutes valid consideration to support a contract). By allowing a transfer of benefits to a statutorily defined beneficiary the statute confers an advantage to prisoners with spouses, children or dependents, not equally available to prisoners without these statutory beneficiaries.
Additionally, the statutes confer the benefit of an assured interest in the award upon release to prisoners who anticipate release during their lifetimes.
Because the advantage of transferring or postponing benefits is not equally available to all members of the class of prisoners covered by the industrial insurance plan, Labor & Industries has not met the first prong of the rational basis test.[9]
B. Whether there are reasonable grounds to uphold this distinction based on a legitimate public interest.
Labor & Industries raises the same grounds to justify unequal treatment of members of the class of imprisoned workers who qualify for permanent partial disability benefits it raised in context of the prisoners' due process claim. Br. of Appellant at 17-26.
For many of the same reasons articulated above we hold these grounds fail to provide a rational basis for the statutory distinction between prisoners who either have a beneficiary or are likely to be released during their lifetimes and all others.
Permanent partial disability benefits are unrelated to wage compensation. The fact that the State already provides for the prisoners' basic needs is irrelevant to Labor & Industries' statutory obligation to compensate prisoners for their industrial injuries. Moreover, preservation of state funds is not in itself a sufficient ground to defeat an equal protection challenge. Thus, we reject the wage compensation, burden shifting, and cost saving arguments. Br. of Appellant at 17, 22, and 25.
Permanent partial disability benefits are paid on a monthly basis, not as a lump sum and prisoners have very limited access to their own money. Thus, we also reject the prison discipline rationale. Id. at 24.
Finally, we reject the fraud prevention rationale. Id. at 26-28. Labor & Industries asserts all prisoners are more likely to commit fraud or intentionally injure themselves. Br. of Appellant at 26. But even assuming if so, the fraud rationale still does not account *620 for the challenged distinction between inmates unlikely to be released and without beneficiaries and all others.
We therefore hold RCW 51.32.040(3)(a), as applied to prisoners by 72.60.102, violates equal protection.

CONCLUSION
The trial court is affirmed. The cases are remanded for proceedings consistent with this opinion. The prisoners shall recover their costs on appeal.
WE CONCUR: ALEXANDER, C.J., SMITH, JOHNSON, CHAMBERS, JJ.
MADSEN, J. (concurring/dissenting).
RCW 51.32.040(3)(a) operates to suspend the workers' compensation permanent partial disability benefits of persons confined under conviction and sentence during the period of their incarceration.[1] The majority incorrectly concludes that this statute violates the due process and equal protection rights of prisoners who are unlikely to be released in their lifetimes and who have no statutory beneficiaries. I must respectfully disagree.
RCW 51.32.040(3)(a) cannot operate to violate due process because the appellant-prisoners' rights to benefits were subject to all of the workers' compensation statutes, including RCW 51.32.040, existing at the time their injuries occurred. In other words, the parameters of their vested property right to benefits are defined by all of the statutes, including RCW 51.32.040.
As to equal protection, even under the classifications accepted by the majority, application of the statute would not violate equal protection. The only relevant distinction the statute draws between prisoners is that those with statutory beneficiaries will have their benefits paid to those beneficiaries during the prisoners' incarceration. The distinction is rationally related to a legitimate purpose of governmentsupport of beneficiaries of inmates during their periods of incarceration.
However, I believe the true statutory classifications drawn by the statute are convicted persons who are incarcerated under sentence, and persons who are not incarcerated. As to these classifications, the statute does not violate equal protection guaranties either. All prisoners' permanent partial disability benefits are suspended during the period of incarceration, subject to the exception that the benefits may be paid to statutory beneficiaries. All prisoners without statutory beneficiaries either receive the benefits upon discharge or, if an inmate dies while incarcerated, benefits due will pass to a surviving spouse, child, or children or by the inmate's will or intestacy. The classification bears a rational relationship to a legitimate legislative purpose, which recognizes that prisoners' basic needs, including needs related to their partial disability, are provided for by a state institution while nonprisoners' needs are not.
I agree with the majority, however, that RCW 51.32.040(3)(a) does not contravene RCW 9.92.110.

Due Process
"A claimant alleging deprivation of due process must first establish a legitimate claim of entitlement." Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 142, 744 P.2d 1032 (1987); 750 P.2d 254. "Legitimate claims of entitlement entail vested liberty or property rights." Id. A vested right entitled to protection "`must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another.'" Gillis v. King County, 42 Wash.2d 373, 377, 255 P.2d 546 (1953) (quoting 2 Thomas McIntyre Cooley, A Treatise on the Constitutional Limitations 749 (8th ed.1927)); accord, e.g., State v. Hennings, 129 Wash.2d 512, 528, 919 P.2d 580 (1996); Caritas Servs., Inc. v. Dep't of Soc. & Health Servs., 123 Wash.2d 391, 414, 869 P.2d 28 (1994); In re Marriage of MacDonald, 104 *621 Wash.2d 745, 750, 709 P.2d 1196 (1985); Smith v. Spokane County, 89 Wash.App. 340, 352-53, 948 P.2d 1301 (1997).
A claimant to workers' compensation benefits has "no vested right or substantial right" to benefits under the Industrial Insurance Act "except such right as the legislature" provides. Pape v. Dep't of Labor & Indus., 43 Wash.2d 736, 741-42, 264 P.2d 241 (1953) (in context of claim for aggravation of injury). Thus, the rights of claimants under the act are determined according to the law in force when they were injured. Hubbard v. Dep't of Labor & Indus., 140 Wash.2d 35, 42, 992 P.2d 1002 (2000); Seattle Sch. Dist. No. 1 v. Dep't of Labor & Indus., 116 Wash.2d 352, 358, 804 P.2d 621 (1991); Ashenbrenner v. Dep't of Labor & Indus., 62 Wash.2d 22, 25, 380 P.2d 730 (1963) (and see cases cited therein).
The majority says that RCW 51.32.080 "mandates" payment of permanent partial disability benefits upon determination of the injury, and concludes that therefore the appellants have a vested right to such benefits. Majority at 615. However, RCW 51.32.080 does not stand alone; it is but one part of the statutory scheme. At the time these appellants were injured, the act also provided that if a worker receiving benefits under Title 51 RCW was subsequently confined in an institution under conviction and sentence, or became eligible for benefits while so confined, that worker "shall have all payments of the compensation canceled during the period of confinement." RCW 51.32.040(3)(a). Thus, the legislature has enacted a statutory scheme that conditions payment under RCW 51.32.080, by the provisions of RCW 51.32.040(3)(a), to the end that a claimant has no right to benefits during a period of incarceration, with the exception being that any beneficiaries of the worker would receive the benefits during the period of incarceration. Id.
Accordingly, the right these workers have to receive permanent partial disability benefits was at the time they were injured, and still is conditioned upon their not being incarcerated following conviction of an offense. That is what the legislature provided, and the appellants have no vested right beyond what the legislature provided.
Cases from other jurisdictions are instructive. In Wood v. Beatrice Foods Co., 813 P.2d 821 (Colo.Ct.App.1991), a claimant was denied permanent partial disability benefits during his incarceration on a felony conviction. The applicable statute suspended all such benefits under such conditions except for benefits assigned to a spouse or minor child.[2] Under Colorado decisions, a worker's compensation award does not become vested until entry of the award. Wood, 813 P.2d at 823. The inmate's award was not entered until after enactment of the statute suspending benefits. Consequently, the court held that the statute applied and its application did not violate due process because the claimant had not been deprived of a vested property right in the benefits. Wood, 813 P.2d at 824. In contrast, in Aranda v. Indus. Comm'n of Ariz., 198 Ariz. 467, 11 P.3d 1006 (2000), a statute similarly provided for suspension of permanent partial disability benefits during the workers' periods of incarceration, but the statute was enacted after the claimants' awards were final. The court reasoned that vesting occurred, at the latest, upon finalization of the awards, and that vested workers' compensation awards constitute property. Aranda, 198 Ariz. at 472, 11 P.3d 1006. The court also observed that while the legislature could enact laws applying to vested rights, it could change only the legal consequences of future events. Id. Therefore, the court held that the statute could not be applied to the claimants whose awards were final and whose offenses were committed prior to the effective date of the statute. Aranda, 198 Ariz. at 473, 11 P.3d 1006.
Here, the appellants' vested right to permanent partial disability benefits includes the limitations in RCW 51.32.040(3)(a). That statute existed at the time they were injured, and thus applies to define their rights under the workers' compensation act every bit as *622 much as does RCW 51.32.080, upon which the majority relies. Accordingly, appellants' due process rights are not violated by application of the statute. The superior court's ruling to the contrary should be reversed.

Equal Protection
Equal protection requires that persons similarly situated with respect to the law receive like treatment. Gossett v. Farmers Ins. Co. of Wash., 133 Wash.2d 954, 979, 948 P.2d 1264 (1997); State v. Blilie, 132 Wash.2d 484, 493, 939 P.2d 691 (1997). I agree with the majority that the appropriate level of judicial review is the minimal scrutiny standard, applying the rational basis test. The rational basis test is "relaxed and highly deferential." In re Det. of Turay, 139 Wash.2d 379, 410, 986 P.2d 790 (1999). Under this standard, a statute must be rationally related to the achievement of a legitimate state interest. Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wash.2d 303, 313, 53 P.3d 993 (2002); In re Det. of Turay, 139 Wash.2d at 410, 986 P.2d 790 (a legislative classification will be upheld unless it rests on a ground wholly irrelevant to a legitimate state objective); Gossett, 133 Wash.2d at 979, 948 P.2d 1264. A classification will be upheld if there is "any conceivable set of facts that could provide a rational basis for the classification." Gossett, 133 Wash.2d at 979, 948 P.2d 1264 (citing Heller v. Doe by Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). The burden is on the challenger to establish that the classification is purely arbitrary. Gossett, 133 Wash.2d at 979, 948 P.2d 1264 (citing Heller, 509 U.S. at 320, 113 S.Ct. 2637; State v. Thorne, 129 Wash.2d 736, 771, 921 P.2d 514 (1996)).
The superior court held that RCW 51.32.040(3)(a) creates two classes of prisoners: those likely either to be released from prison during their lifetimes or to have beneficiaries during their imprisonment, and those who are unlikely to be released from prison or to have beneficiaries during their lifetimes. The majority agrees that the distinction drawn by the superior court more accurately describes the relevant class than that urged by the Department of Labor and Industries (Department), which argues that the relevant classes are incarcerated workers and workers who are not incarcerated. Majority at 618.
Even if one agrees with the classifications identified by the majority, the rational basis test is satisfied. Although the statute speaks in terms of an inmate's benefits being "canceled" it does not actually provide for cancellation of benefits. Instead, it requires that benefits be suspended for the duration of a prisoner's period of incarceration. It applies alike to all prisoners because no inmate is entitled to receive any permanent partial disability benefits while incarcerated. All prisoners either receive the benefits after discharge, or, if a prisoner dies while incarcerated, under RCW 51.32.040(2)(a) benefits due will pass to a surviving spouse, child, or children or will pass by the inmate's will or intestacy. The exception is that if an inmate has statutory beneficiaries while incarcerated, the beneficiaries will receive the benefits during the period of incarceration. This is the only distinction between "classes" of prisoners. Aside from this distinction, all prisoners are treated identically. The statutorily required delay in payments applies to all inmates.
The exception, payment to beneficiaries, clearly has a rational basis. As noted, the rational basis test is highly deferential to the legislature, and the burden of establishing arbitrariness under the rational basis test is on the challenger. The question is whether there is "any conceivable set of facts that could provide a rational basis for the classification." Gossett, 133 Wash.2d at 979, 948 P.2d 1264 (citing Heller, 509 U.S. at 320, 113 S.Ct. 2637).
There are rational grounds for payment of permanent partial disability payments to beneficiaries of workers having statutory beneficiaries during incarceration of the worker. Generally speaking, inmates have responsibility for support of their families. Moreover, statutory beneficiaries are often children, and inmates may have specific legal child support obligations to such beneficiaries. In addition, statutory beneficiaries of inmates may become wards of the State during the inmate's period of incarceration, or, if *623 already receiving social welfare assistance, be more in need during the period of incarceration. In each of these circumstances, payment of permanent partial disability benefits will help ameliorate the harsh effects that the worker's incarceration has on beneficiaries.
There is thus a rational basis for the only distinction drawn by the statute between "classes" of prisoners, i.e., that during the period of incarceration payments will be made only in the case of inmates having statutory beneficiaries. Consequently, there is no violation of equal protection resulting from application of RCW 51.32.040(3)(a) in these cases even if the classes are drawn as the majority says.
However, I do not agree that the majority's line-drawing is correct. It is essential in equal protection analysis to look at the classifications drawn by the statute. Here, RCW 51.32.040 in its entirety assures that the injured worker or other statutorily designated person or persons receives the benefits due under the act. Subsection (1) provides, with limited exceptions, that no money payable under Title 51 RCW shall, prior to issuance of the check or warrant, go to any other person unless the transfer is to a financial institution at the request of a beneficiary or worker in accord with RCW 51.32.045. Subsection (2) provides that in the instance of the worker's death, specified benefits due shall be paid to the surviving spouse and children, if any, or shall transfer by the worker's will or by intestacy, and provides the procedures for application for compensation under this subsection. Subsection (3) concerns provisions for cancellation (or, more accurately, suspension) of permanent partial disability benefits during periods of incarceration, or, if the worker has beneficiaries, payments to those beneficiaries, as well as payments of suspended benefits upon discharge. It also addresses benefits to prisoners injured in a work or training release program. Finally, subsection (4) provides that any lump sum payments the worker would be entitled to except for the other provisions in the statute shall be paid on a monthly basis to the worker's beneficiaries.
RCW 51.32.040(3)(a) more specifically provides, as noted, that a prisoner's benefits will not be paid to him or her during the period of incarceration, but will be paid to statutory beneficiaries, if any. If there is none, then the benefits will not be paid until the prisoner is discharged from prison. If, however, the prisoner dies before discharge, then under the provisions of subsection (2), the benefits will pass to a surviving spouse, child, or children, or transfer by virtue of the prisoner's (worker's) will or by intestacy.
The relevant distinction drawn by RCW 51.32.040(3)(a) is between prisoners for whom payment of benefits is delayed during the period of incarceration, unless they have statutory beneficiaries, and nonprisoners who receive such benefits without any such delay. The statute does not distinguish between prisoners who will be incarcerated for life and other prisonersall will have their benefits canceled (suspended) for the period of incarceration, however long a time that is, subject to the exception that if they have statutory beneficiaries, those beneficiaries will receive the benefits. All inmates are subject to the same prohibition, i.e., their payments are delayed during the period of incarceration; all inmates are subject to the same condition, that if they have beneficiaries, the beneficiaries can receive the benefits during incarceration; all inmates are entitled to the canceled (suspended) benefits upon discharge, provided they were not paid to beneficiaries during incarceration; and all inmates who die while incarcerated will have benefits due pass to a surviving spouse, child, or children or by will or intestacy. None of the inmates loses the right to the benefits, as conditioned by the statute.
There is a rational basis for the distinction drawn by the legislature between prisoners and nonprisoners. The obvious difference between prisoners and nonprisoners is that the prisoners have all of their basic needs met by the State. Inmates do not have the same need for benefits while they are incarcerated as nonprisoners have. At the same time, by providing that such benefits are payable following a prisoner's discharge (if not paid to beneficiaries during incarceration), the legislature has acted to relieve *624 economic costs of partial disability following a prisoner's discharge, at a time when such need may be experienced by the prisoner.
Thus, given the classifications identified by the Department, RCW 51.32.040(3)(a), does not violate equal protection in these cases. I would therefore reverse the superior court's ruling on this issue.

Marital Discrimination
Appellant Cain additionally argues that application of RCW 51.32.040(3)(a) in his case violates laws against marital discrimination. He reasons that the statute results in a denial of benefits for life conditional on his future marital status, because it provides for payments of benefits to beneficiaries during incarceration of an inmate, but does not provide for payments during incarceration where the inmate has no beneficiaries, as in his case. The majority does not reach this issue.
Cain's argument must be rejected, at the least, because the statute does not provide that payments while the worker is incarcerated depend on marital status. Instead, it provides for payments to beneficiaries, which include a spouse, a child or a dependent. RCW 51.08.020; see RCW 51.08.030 (defining "child"); RCW 51.08.050 (defining "dependent" as one of a list of specified relatives of the worker who dies, leaving no spouse or child, provided that the named relative was at the time of the injury actually and necessarily dependent for his or her support on the earnings of the worker). In addition, none of the statutes cited by Cain applies to the benefits distribution scheme in Title 51 RCW. I would hold that Cain has not established that RCW 51.32.040(3)(a) violates laws against marital discrimination.

Conclusion
Application of RCW 51.32.040(3)(a) to these cases violates neither due process nor equal protection guaranties. Therefore, I would reverse the superior court's rulings to the contrary. I agree with the majority that the statute does not violate the forfeiture provisions of RCW 9.92.110, and accordingly the superior court should be reversed on this issue as well.
NOTES
[1] The superior court denied Willoughby and Cain's claimed violations of the ex post facto clause of the federal constitution, the Eighth Amendment prohibition against cruel and unusual punishment, and state and federal constitutional prohibitions against retrospective legislation. Willoughby Clerk's Papers (CP) at 29-30 (Willoughby v. Dep't of Labor & Indus., No. 96-2-00344-2 (Findings of Fact and Conclusions of Law, Sup.Ct. July 25, 2000)); Cain CP at 41-44 (Cain v. Dep't of Labor & Indus., No. 98-2-00240-0 (Findings of Fact and Conclusions of Law, Sup.Ct. July 25, 2000)).
[2] The record does not indicate when Cain was sentenced. However, the State concedes that he is unlikely to be released during his lifetime. Br. of Appellant at 7.
[3] Washington's Industrial Insurance Act, Title 51 RCW, defines "beneficiary" as "a husband, wife, child, or dependent of a worker...." RCW 51.08.020. A "dependent" is defined as "any of the following named relatives of a worker whose death results from any injury and who leaves surviving no widow, widower, or child, viz: Father, mother, grandfather, grandmother, stepfather, stepmother, grandson, granddaughter, brother, sister, half-sister, half-brother, niece, nephew, who at the time of the accident are actually and necessarily dependent in whole or in part for their support upon the earnings of the worker." RCW 51.08.050.
[4] See also RCW 51.32.040(4): "Any lump sum benefits to which a worker would otherwise be entitled but for the provisions of this section shall be paid on a monthly basis to his or her beneficiaries." This provision further underscores the right of transfer granted to prisoners with beneficiaries.
[5] A finding of a compensable injury includes a determination that the injury was not self-inflicted. See RCW 51.32.020.
[6] We also note Labor & Industries does not contest the superior court's factual conclusion that Cain sustained a compensable industrial injury. Br. of Appellant at 8; Resp. to Br. of Amicus Curiae at 10-11. Unchallenged facts are verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
[7] RCW 72.11.020 provides in pertinent part:

The secretary shall be custodian of all funds of a convicted person that are in his or her possession upon admission to a state institution, or that are sent or brought to the person, or earned by the person while in custody, or that are forwarded to the superintendent on behalf of a convicted person. All such funds shall be deposited in the personal account of the convicted person within the institutional resident deposit account[.]
Additionally, a prisoner's individual funds are subject to statutory deductions, such as a mandatory contribution to the inmate's cost of incarceration, established in RCW 72.09.111(1)(a). RCW 72.09.480. Consistent with this policy of limiting prisoners' access to money while imprisoned, the Department of Corrections treats currency, personal checks, and money orders as contraband. WAC 137-36-040(1)(c).
[8] The superior court concluded RCW 51.32.040(3)(a) and 72.60.102 violated both state and federal equal protection guarantees. Willoughby CP at 28; Cain CP at 42. Because Willoughby and Cain argue violations of equal protection, as opposed to undue favoritism, our state equal protection review is subsumed under the federal equal protection analysis. See, e.g., Clark v. Pacificorp, 118 Wash.2d 167, 192 n. 13, 822 P.2d 162 (1991), superseded by statute on other grounds as stated in Gilbert H. Moen Co. v. Island Steel Erectors, Inc., 128 Wash.2d 745, 912 P.2d 472 (1996).
[9] It is worth noting at the time the statutory bar was enacted in 1965, the highest noncapital penalty was life imprisonment with the possibility of parole. The parole board had authority to release all prisoners, including those serving a mandatory life sentence after they had served 20 consecutive years. See former RCW 9.95.115 (1951). It was not until 1981 with the enactment of the Sentencing Reform Act of 1981, chapter 9.94A RCW, that it was possible to receive a sentence of life imprisonment without the possibility of parole. One of the effects of the drastically increased penalties was to transform the statutory bar from a limitation on a right to an absolute denial of a right for prisoners like Willoughby and Cain.
[1] The statute concerns only permanent partial disability benefits because, under RCW 72.60.102, inmates employed in certain classes of correctional industries are eligible for benefits under Title 51 RCW, but benefits for temporary disability or permanent total disability shall not take effect until the inmate is released on parole or discharged from custody.
[2] The relevant statute, former COLO.REV.STAT. § 8-52-104.5 (1986), was later repealed. See 1990 Colo. Sess. Laws H.B. 90-1160, § 77.